IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| IN THE MATTER OF:<br><br>JEFFREY JOHN WALTERS,<br><br>                Debtor(s). | CASE NO. BK23-80500-TLS<br><br>CHAPTER 7<br><br>ADV. NO. A24-8004-TLS |
| UNITED STATES TRUSTEE,<br><br>                Plaintiff(s)<br>vs.<br>JEFFREY JOHN WALTERS,<br><br>                Defendants(s). | **ORDER** |

      This matter came before the court on April 3, 2025, for trial on the plaintiff's complaint objecting to discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(4)(A), and (a)(5). Amy Blackburn appeared for the plaintiff, and Nicole Hughes appeared for the defendant. The parties submitted written closing arguments after the trial, and the case is now ready for decision.

      For the reasons stated below, the complaint is denied.

      Debtor Jeffrey Walters and his wife Rebecca formed Just Waste, Inc. ("JWI"), in May 2016 and were its sole shareholders. The company provided roll-off dumpsters and transfer trash-hauling services in the Council Bluffs-Omaha area. In 2019, JWI expanded its operation to Colorado, leveraging the local operation to purchase assets and hire employees for the Colorado business. The Walters quickly discovered the Colorado operation was not lucrative and closed it in 2020.

      Over the next couple of years, Mr. and Mrs. Walters struggled to keep JWI going. The Iowa Secretary of State administratively dissolved JWI on September 28, 2022, for failure to file a required report. JWI ceased all operations the following year. While JWI was faltering, Mr. and Mrs. Walters organized The Trash Bandits, LLC, in Nebraska in September 2021 to explore continuing the solid-waste-removal business by obtaining new financing because JWI was "debt-heavy" and "lacked options," as Mr. Walters testified. According to Mr. Walters, he never really moved forward with the Trash Bandits business, and it did not acquire any assets, enter into any contacts for trash hauling or delivery of roll-off containers, hire any employees, obtain any loans, or file any tax returns. The Nebraska Secretary of State's records show the company was administratively dissolved in June 2023. Mr. Walters filed his Chapter 7 bankruptcy petition on June 29, 2023.

Trash Bandits did open two bank accounts after its creation, however. Those accounts were used for deposits and withdrawals by JWI and by Mr. Walters personally, which caught the attention of the financial auditor for the United States Trustee ("UST"). After further investigation, the UST filed this adversary proceeding on March 15, 2024, objecting to the debtor's discharge under § 727 of the Bankruptcy Code. The UST asserts the debtor failed to disclose and concealed the existence of and his interest in Trash Bandits, and the payments through its accounts, with intent to hinder, delay, or defraud creditors. The UST further asserts the debtor knowingly and fraudulently made false oaths in his bankruptcy petition, schedules, Statement of Financial Affairs, and §341 meeting by failing to disclose The Trash Bandits. Finally, the UST asserts the debtor has failed to satisfactorily explain the loss or deficiency of assets, including the dissipation of funds in the Trash Bandits bank accounts. Mr. Walters denies any intent to defraud anyone or to conceal assets or make false oaths. He testified that he simply forgot about Trash Bandits when filling out his initial bankruptcy paperwork because it never was a going concern. He also testified in detail at the trial about his reasons for using the Trash Bandits accounts for income and expenses of JWI, which will be discussed further below.

A bedrock principle of the bankruptcy system is to give honest but unfortunate debtors a fresh start. Denial of discharge is "a serious matter not to be taken lightly by a court." *McDonough v. Erdman (In re Erdman)*, 96 B.R. 978, 984 (Bankr. D.N.D. 1988). It "is akin to financial capital punishment" and "is reserved for the most egregious misconduct by a debtor." *United States Trustee v. Beard (In re Beard)*, 595 B.R. 274, 289 (Bankr. E.D. Ark. 2018) (quoting *Manning v. Watkins (In re Watkins)*, 474 B.R. 625, 630 (Bankr. N.D. Ind. 2012)). Such misconduct is dealt with harshly because a discharge in bankruptcy and the associated fresh start are privileges, not rights. *Bauer v. Iannacone (In re Bauer)*, 298 B.R. 353, 357 (B.A.P. 8th Cir. 2003) (*citing Grogan v. Garner*, 498 U.S. 279, 286 (1991)). "The opportunity for a completely unencumbered new beginning is limited to the honest but unfortunate debtor. The cost to the debtor for an unencumbered fresh start is minimal, but it includes honestly and accurately disclosing his or her financial affairs and cooperating with the trustee." *Doeling v. Reimer (In re Reimer)*, No. AP 19-7072, 2021 WL 1621295, at *9 (Bankr. D.N.D. Apr. 26, 2021) (internal citations omitted).

The provisions of § 727 are strictly construed in the debtor's favor, while remaining cognizant that § 727 exists to prevent a debtor's abuse of the Bankruptcy Code. *Fox v. Schmit (In re Schmit)*, 71 B.R. 587, 589-90 (Bankr. D. Minn. 1987). When a party objecting to a debtor's discharge "establishes a prima facie case, the burden then shifts to the debtor defendant to offer credible evidence to satisfactorily explain his conduct." *Beard*, 595 B.R. at 290 (quoting *Robbins v. Haynes (In re Haynes)*, 549 B.R. 677, 685 (Bankr. D.S.C. 2016)). *See also* Fed. R. Bankr. P. 4005; *Kaler v. Charles (In re Charles)*, 474 B.R. 680, 683-84 (B.A.P. 8th Cir. 2012).

Section 727(a)(2) of the Bankruptcy Code, which denies a discharge to debtors who transfer or conceal property with an intent to defraud creditors, states, in relevant part, that:

(a) The court shall grant the debtor a discharge, unless —
. . .
(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred,

removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed —
  (A) property of the debtor, within one year before the date of the filing of the petition[.]

Section 727(a)(4)(A) denies discharge to debtors who knowingly and fraudulently submit a false oath or account. It states in relevant part:

(a) The court shall grant the debtor a discharge, unless–
. . .
  (4) the debtor knowingly and fraudulently, in or in connection with the case–
  (A) made a false oath or account[.]

These sections are "fundamental to the concept that a debtor's chapter 7 discharge is granted upon the condition that the debtor has disclosed all of [his] assets and made them available for distribution." *Beard*, 595 B.R. at 290.

To prevail on the § 727(a)(2) cause of action, the plaintiff must show by a preponderance of the evidence that (1) the debtor's actions took place within twelve months prior to the filing of the petition for bankruptcy relief; (2) the debtor took the actions with the intent to hinder, delay or defraud a creditor or an officer of the estate; (3) the debtor himself took the actions; and (4) the debtor's actions consisted of transferring, removing, destroying or concealing property. *Georgen-Running v. Grimlie (In re Grimlie)*, 439 B.R. 710, 716 (B.A.P. 8th Cir. 2010); *Korte v. United States (In re Korte)*, 262 B.R. 464, 472 (B.A.P. 8th Cir. 2001).

Here, elements (1), (3), and (4) are not in dispute. The defendant bases his defense on a lack of intent to hinder or defraud a creditor. In other words, he argues that the failure to schedule certain assets and to properly answer SOFA questions were simply innocent mistakes.

The debtor's actual, subjective intent to hinder, delay or defraud is a requisite element of denial of a discharge. *Helena Chem. Co. v. Richmond (In re Richmond)*, 429 B.R. 263, 304 (Bankr. E.D. Ark. 2010). Constructive intent will not suffice. *Jacoway v. Mathis (In re Mathis)*, 258 B.R. 726, 733 (Bankr. W.D. Ark. 2000) (citing *Lovell v. Mixon*, 719 F.2d 1373, 1377 (8th Cir. 1983)). Because direct evidence of a debtor's intent may be difficult to come by, such intent may be inferred from facts and circumstances of the debtor's conduct. *Korte*, 262 B.R. at 472-73. The overriding principle applicable in virtually all cases under § 727(a) is that "a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *U.S. Trustee v. Govani (In re Govani)*, 509 B.R. 675, 683 (Bankr. N.D. Iowa 2014) (quoting *Phillips v. Epic Aviation (In re Phillips)*, 476 Fed. Appx. 813, 816 (11th Cir. 2012)).

Likewise, § 727(a)(4)(A) necessitates an assessment of the debtors' intent. Section 727(a)(4)(A) of the Bankruptcy Code authorizes the court to withhold a discharge of all of a debtor's debts when the debtor knowingly and fraudulently makes a false oath or account in the bankruptcy case. The purpose of § 727(a)(4)(A) is to "promote[] truth-telling in the statements and schedules so that creditors and trustees will not have to resort to independent investigation and

fact-finding." *Wetzel v. Eichler (In re Eichler)*, 599 B.R. 31, 46 (Bankr. E.D. Ark. 2019) (quoting *Daniel v. Boyd (In re Boyd)*, 347 B.R. 349, 355 (Bankr. W.D. Ark. 2006)). "Full disclosure is required, not only to ensure that creditors receive everything they are entitled to receive under the Bankruptcy Code, but also to give the bankruptcy system credibility and make it function properly and smoothly[.]" *Home Serv. Oil Co. v. Cecil (In re Cecil)*, 542 B.R. 447, 454 (B.A.P. 8th Cir. 2015). The Eighth Circuit Bankruptcy Appellate Panel described the analysis under § 727(a)(4)(A) as follows:

> Section 727(a)(4)(A) "provides a harsh penalty for the debtor who deliberately secretes information from the court, the trustee, and other parties in interest in his case." *Cepelak v. Sears (In re Sears)*, 246 B.R. 341, 347 (8th Cir. BAP 2000). . . . For such a false oath or account to bar a discharge, the false statement must be both material and made with intent. . . . The question of a debtor's "knowledge and intent under § 727(a)(4) is a matter of fact." *In re Sears*, 246 B.R. at 347 (citing *In re Olson*, 916 F.2d at 484). Intent "can be established by circumstantial evidence," and "statements made with reckless indifference to the truth are regarded as intentionally false." *Golden Star Tire, Inc. v. Smith (In re Smith)*, 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993) (citing *In re Sanders*, 128 B.R. 963, 964 (Bankr. W.D. La. 1991)).
>
> As § 727(a)(4)(A) makes clear, "[t]he Code requires nothing less than a full and complete disclosure of any and all apparent interests of any kind." *Fokkena v. Tripp (In re Tripp)*, 224 B.R. 95, 98 (Bankr. N.D. Iowa 1998) (citing *In re Craig*, 195 B.R. 443, 451 (Bankr. D.N.D. 1996)). The debtor's "petition, including schedules and statements, must be accurate and reliable, without the necessity of digging out and conducting independent examinations to get the facts." *In re Sears*, 246 B.R. at 347 (citing *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992)). *See generally National Am. Ins. Co. v. Guajardo (In re Guajardo)*, 215 B.R. 739, 742 (Bankr. W.D. Ark. 1997) ("[T]he Bankruptcy Code requires disclosure of all interests in property, the location of all assets, prior and ongoing business and personal transactions, and, foremost, honesty. The failure to comply with the requirements of disclosure and veracity necessarily affects the creditors, the application of the Bankruptcy Code, and the public's respect for the bankruptcy system as well as the judicial system as a whole."). Statements made in schedules are signed under penalties of perjury and have "the force and effect of oaths," and testimony elicited at the first meeting of creditors is given under oath. *In re Smith*, 161 B.R. at 992 (citing *In re Sanders*, 128 B.R. 963 (Bankr. W.D. La. 1991)).

*Korte v. United States (In re Korte)*, 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

Well-established case law holds that because the statements made by a debtor in his schedules and statements and at the meeting of creditors are signed under penalty of perjury and made under oath, they constitute "oaths" for purposes of § 727(a)(4)(A). *Kaler v. Charles (In re Charles)*, 272 B.R. 680, 684 (B.A.P. 8th Cir. 2012) (citing *Korte*, 262 B.R. at 474; Fed. R. Bankr. P. 1008.

A matter is "material" if it concerns the discovery of assets or the existence and disposition of estate property, or bears a relationship to the debtor's business transactions or estate. *Mertz v. Rott*, 955 F.2d 596, 598 (8th Cir. 1992); *Ellsworth v. Bauder (In re Bauder)*, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005); *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984) (per curiam). The value of omitted assets is relevant to materiality, but materiality will not turn on value; an omission of a relatively modest asset will merit denial of discharge, if done with knowledge and fraudulent intent. *Mertz*, 955 F.2d at 598; *Palatine Nat'l Bank v. Olson (In re Olson)*, 916 F.3d 481, 484 (8th Cir. 1990). "Since the bankruptcy system depends on full disclosure, a discharge is properly denied where a debtor acts with reckless indifference in failing to list assets in which that debtor holds an interest." *Cecil*, 542 B.R. at 454–55.

Under §727(a)(5), the debtor is not entitled to a discharge if he "failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

> If the explanation is too vague, indefinite, or unsatisfactory then the debtor is not entitled to a discharge. The explanation given by the debtor must be definite enough to convince the trial judge that assets are not missing. An important component in ascertaining the reasonableness of any explanation is its capacity for verification; that is, is the explanation sufficient to enable either the trustee or a creditor to properly investigate the circumstances surrounding the loss or deficiency. Unsubstantiated, uncorroborated and undocumented testimony from the debtor is not likely sufficient.

*Allred v. Vilhauer (In re Vilhauer)*, 458 B.R. 511, 514–15 (B.A.P. 8th Cir. 2011) (internal citations omitted).

In this case, the UST focuses on Mr. Walters' use of the Trash Bandits bank accounts, his omission of certain accounts and transfers, and the lack of documentation for certain payments. The UST asserts that the defendant's use of the Trash Bandits and JWI accounts, the commingling of funds, and the lack of adherence to corporate formalities should support a finding that JWI and Trash Bandits are alter egos of the defendant. Such a finding requires proof of fraud or dishonesty:

> Under Nebraska law, the corporate entity may be disregarded and a party held to be an alter ego in circumstances where necessary to prevent fraud or injustice. *Medlock v. Medlock*, 642 N.W.2d 113, 124 (2002). The relevant factors for determining whether to declare a corporate entity a mere alter ego include the diversion of corporate funds or assets for personal use and carrying on personal business dealings of the shareholder and operations of the corporation in disregard of the corporate entity. *Id.* . . . A corporation's identity as a separate legal entity will be preserved, as a general rule, until sufficient reason to the contrary appears and a court will disregard a corporation's identity, or pierce the corporate veil, only where the corporation has been used to commit fraud, violate a legal duty, or perpetrate a dishonest or unjust act in contravention of the rights of another. *Howsden v. Roper's Real Est. Co.*, 805 N.W.2d 640, 645–46 (2011).

*Schellenberger v. Rosenblatt*, No. 8:21CV238, 2023 WL 5275599, at *3 (D. Neb. Aug. 16, 2023).

Accordingly, each of the code sections upon which the UST relies requires a finding of fraud, dishonesty or intent to deceive. No such showing has been made here. First, while there certainly were deficiencies in the initial schedules and SOFA filed by Mr. Walters, the evidence is that he promptly and fully complied with the UST's requests for additional information and filed amendments as necessary. The case trustee testified that he reviewed the amended documents and the bank records provided in discovery, but nothing in those materials suggested to him there was value available to recover for the estate. Mr. Walters could and should have done a better job of completing his schedules in the first place. No argument there. But, strictly construing the provisions of section 727 in debtor's favor, the evidence failed to indicate any nefarious intent, dishonesty or fraud on the part of Mr. Walters.

Second, Mr. Walters credibly testified that the financial transactions and account usage highlighted by the UST were for the purpose of liquidating JWI. Certain debts about which the UST has raised questions were not listed on the debtor's initial schedules because they were not personal obligations; rather, they were debts owed by JWI. The proceeds from the sale of JWI's assets went either toward paying JWI's creditors or toward payments of Mr. Walters' expenses in lieu of a salary from JWI. The accounting trail would have been easier to follow had every check for the sale of a JWI asset been made payable to JWI and deposited into a JWI bank account, but reality is not always so tidy, especially when a small business's owner is battling to keep it going. Nevertheless, and importantly, there is no evidence that JWI assets were used for anything other than paying JWI's debts and a relatively modest amount for the payment of some of Mr. Walters' personal expenses as he did not receive a salary from JWI. Likewise, Mr. Walters testified credibly that many of JWI's vendors began requiring payment in cash when the company was struggling financially, explaining that many of the cash withdrawals went to pay those expenses. Despite Mr. Walters' efforts, not all of JWI's creditors received payment in full. Most of the assets were collateral for secured lenders. Mr. Walters testified that he, on behalf of JWI, gave certain creditors preference over others in order to keep good business relationships as he attempted to determine whether he could move forward with the Trash Bandits business. It was, as he testified, a matter of trying to figure out the best way to use limited funds to keep everyone as happy as possible. While his methods of doing so cannot be condoned by this Court, they will not be condemned by denying his discharge.

This case simply does not reach the levels of egregious conduct often found to warrant a denial of discharge. *See, e.g.*, *Sears v. Sears*, 863 F.3d 980 (8th Cir. 2017) (debtor fraudulently concealed the gratuitous pre-petition transfer of a boat and trailer and made a false oath about it); *Casamatta v. Wright (In re Wright)*, 644 B.R. 796 (Bankr. D. Neb. 2022) (debtor failed to disclose the sale of jewelry and other personal property; gambled her assets away while avoiding her domestic support obligations and court-ordered attorney fees in her divorce proceeding; and misrepresented her financial condition to her ex-husband); *Finishing Touch Carpet One v. Kinney (In re Kinney)*, 622 B.R. 700 (Bankr. W.D. Ark. 2020) (debtor failed to disclose bank accounts and pre-petition transfers and misstated his income, demonstrating "a consistent reckless indifference toward accuracy and disclosure").

      The evidence here does not demonstrate the defendant's intent to hinder, delay, or defraud any creditors; that he knowingly and fraudulently made a false oath or account in the bankruptcy case; or that there has been an unexplained loss of assets.

      IT IS ORDERED: The plaintiff's complaint objecting to discharge under 11 U.S.C. §§ 727(a)(2)(A), (a)(4)(A), and (a)(5) is denied. Separate judgment will be entered.

      DATED: May 13, 2025

BY THE COURT:

/s/ Thomas L. Saladino
Chief Judge

Notice given by the court to:
    *Amy Blackburn
    Nicole Hughes

*Movant is responsible for giving notice to other parties if required by rule or statute.